Submitted on remand from the Oregon Supreme Court October 3, affirmed December 21, 1988, reconsideration denied April 21, petition for review denied May 31, 1989 (308 Or 79)

# KOCH,
*Appellant,*

*v.*

# CITY OF PORTLAND et al,
*Respondents.*

## (A8509-05763; CA A39374)

766 P2d 405

Robert D. Durham and Kulongoski, Durham, Drummonds & Colombo, Portland, for appellant.

David H. Wilson, Jr. and Bullard, Korshoj, Smith & Jernstedt, Portland, for respondents.

Before Warden, Presiding Judge, and Richardson and Warren, Judges.

WARDEN, P. J.

Richardson, J., concurring.

## WARDEN, P. J.

Plaintiff appeals from a judgment for defendants in this combined writ of review, declaratory judgment and damages action. In each claim, plaintiff, who at the relevant times was a lieutenant in the Portland Police Bureau, attacks the sanction of a 10-day suspension without pay imposed for his alleged breach of a disciplinary rule. The trial court held for defendants on the writ of review and dismissed the other claims. When we first considered the appeal, we held that defendants' action was not reviewable by writ of review and remanded for the trial court to determine the remaining claims. *Koch v. City of Portland,* 88 Or App 335, 745 P2d 435 (1987). The Supreme Court granted review, reversed our decision and remanded the case to us to determine the merits of the writ of review. *Koch v. City of Portland,* 306 Or 444, 760 P2d 252 (1988). We affirm.

In April, 1985, Lloyd Stevenson, a black man, died after a white Portland police officer had used a "choke hold" on him. Stevenson was buried on April 26. On the same day, two other white police officers began selling T-shirts to police officers; the T-shirts displayed a gun and the phrase "Smoke'em don't choke'em." These incidents provoked considerable anger in the Portland black community. On April 29, Ron Herndon, a black community spokesman, held a press conference in which he called for the firing of the officers who sold the T-shirts. Since Stevenson's death, Herndon and Police Chief Penny Harrington had been discussing the issues raised by the incidents.

Plaintiff, who was assigned to the Bureau's training division, had no involvement in the Stevenson and T-shirt matters. He was, however, concerned about them and hoped for a solution that would both bring the community together and avoid the firing of the officers. He had never met Herndon, and Herndon had not heard of him. However, through a mutual acquaintance, plaintiff sent a message asking Herndon to call him at his Bureau telephone number. Herndon did so, whereupon plaintiff proposed that the officers receive a 10-day suspension, perform 20 to 30 hours of community service work at the Martin Luther King Center and appear at a press conference with Herndon, where they would make a public apology. Plaintiff had no authority from

anyone in the Bureau to make that proposal. Herndon thought that it might be a trial balloon and called Chief Harrington, who was surprised to hear of it. She then ordered a disciplinary investigation of plaintiff. As a result of that investigation, the mayor found that plaintiff had violated Bureau of Police General Order § 310.10 and imposed the 10-day suspension without pay that is at issue here.

Plaintiff's arguments focus on the validity, under the Oregon and United States Constitutions, of section 310.10,[1] which provides:

> "Members shall not publicly criticize the Bureau of Police, it's [*sic*] policies, programs, actions or officers or perform any acts or make any written or oral statements which would impair or diminish the orderly and effective operations, supervision or discipline of the Bureau of Police."

Plaintiff's constitutional attacks focus on the prohibition of public criticism of the Bureau and its policies, programs, actions or officers. However, there is no evidence in the record that plaintiff engaged in such criticism, and defendants do not try to support the suspension on that ground. Rather, they emphasize that plaintiff's actions were "oral statements which would impair or diminish the orderly and effective operations * * * of the Bureau of Police." Although the mayor did not refer to any specific portion of the rule, we conclude that he implicitly found that plaintiff violated that provision. The evidence is sufficient to support the mayor's finding.[2] The question is whether the provision is constitutional.

---

[1] The record in the writ of review proceeding consists of reports of interviews with those involved in plaintiff's acts, including plaintiff. There was no hearing or other opportunity for plaintiff to question those interviewed before the order of suspension issued. Defendants emphasize that the scope of the circuit court's review was limited to that record. *See* ORS 34.040(3).

Plaintiff asked the court also to consider depositions of some of those interviewed. Because the evidence in the depositions does not affect our decision, we do not determine the extent to which the court may consider such evidence in a writ of review proceeding that raises constitutional challenges. *See* ORS 34.040(5).

[2] Plaintiff states the facts as though he only had been one citizen commenting to another on a matter of public interest. That view ignores the nature of his actions. During a major public controversy, plaintiff, a subordinate member of the Police Bureau, attempted, without consulting his superiors, to negotiate a resolution of the controversy with a leading critic of the Bureau. He did so from a police telephone after identifying himself to Herndon as "Lieutenant Koch." It was not unreasonable for the mayor to determine that plaintiff's oral statements could impair or diminish the order and effective operation of the Bureau.

Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

That provision prohibits the enactment of any law directed to the substance of any opinion or any subject of communication, but it does not prevent regulations which proscribe the pursuit or accomplishment of a forbidden effect, even if that effect may be achieved through verbal means. *State v. Robertson,* 293 Or 402, 416-417, 649 P2d 569 (1982). Thus, an Oregon State Bar disciplinary rule that prohibited a prosecutor from making certain extrajudicial statements about pending cases did not on its face violate Article I, section 8. The rule simply addressed the incompatibility between the prosecutor's official function and speech that might impair the performance of that function; the only sanctions that it provided were professional, not criminal. "[A] lawyer is not denied freedom to speak, write, or publish; but when one exercises official responsibility for conducting a prosecution according to constitutional standards, one also undertakes the professional responsibility to protect those standards in what he or she says or writes." *In re Lasswell,* 296 Or 121, 125, 673 P2d 855 (1983).

A police officer, like a prosecutor, assumes certain professional responsibilities that necessarily restrict the right to speak freely that the officer would otherwise have. An officer who, without authority to do so, attempts to use his official position to negotiate a resolution to a problem that at that very moment is occupying the attention of his superiors cannot rely on constitutional protections of speech to avoid sanctions under a valid rule that forbids such potential undercutting. That plaintiff may have acted with the best of motives does not excuse his conduct. We have no doubt that he could be subject to sanctions under a properly drawn rule.

The remaining issue under Article I, section 8, is

whether General Order § 310.10 is overbroad.[3] If read literally, it might cover oral or written statements made at any time and in any capacity, not simply those that would be incompatible with an officer's professional obligations. Statements made as a citizen objecting to some departmental policy might, for instance, be thought to impair the discipline of the Bureau. If the rule permitted the imposition of sanctions for such statements, it would apply to protected as well as unprotected speech and would be overbroad. *See State v. Robertson, supra,* 293 Or at 410. It is not necessary, however, to give the rule that meaning. We construe the phrase "make any written or oral statements" to mean "make any written or oral statements *in what he gives others reasonable grounds to believe to be an official capacity.*" As construed, the rule prohibits only the kind of incompatible statements that the Supreme Court described in *In re Lasswell, supra.* Plaintiff clearly made such statements, and the suspension which he suffered as a consequence did not violate Article I, section 8.[4]

Affirmed.

**RICHARDSON, J.,** concurring.

I agree with the lead opinion's statement:

"An officer who, without authority to do so, attempts to use his official position to negotiate a resolution to a problem that at that very moment is occupying the attention of his superiors, cannot rely on constitutional protections of speech to avoid sanctions * * *." 94 Or App at 488.

I also agree with note 2:

"Plaintiff states the facts as though he only had been one citizen commenting to another on a matter of public interest. That view ignores the nature of his actions. During a major public controversy, plaintiff, a subordinate member of the Police Bureau, attempted, without consulting his superiors, to negotiate a resolution of the controversy with a leading critic

---

[3] Our discussion applies only to the portion of the rule that we have determined that the mayor found plaintiff to have violated; we need not consider the validity of the rule's prohibition of any public criticism of the Bureau. *See Oregon State Police Assn. v. State of Oregon,* 94 Or App 478, 766 P2d 408 (1988).

[4] The suspension also did not violate the First Amendment. *See Connick v. Myers,* 461 US 138, 103 S Ct 1684, 75 L Ed 2d 708 (1983). Plaintiff's other arguments do not require discussion.

of the Bureau. He did so from a police telephone after identifying himself to Herndon as 'Lieutenant Koch.' It was not unreasonable for the mayor to determine that plaintiff's oral statements could impair or diminish the order and effective operation of the Bureau." 94 Or App at 487.

I do not agree that much else needs to be said. However plaintiff would characterize his arguments, there is no "speech" issue of any substance in this case. Plaintiff's expression was an unauthorized act, that was clearly incompatible with his public duties and which usurped the authority of his superiors to conduct city business. *See Oregon State Police Assn. v. State of Oregon,* 94 Or App 478, 766 P2d 408 (1988), and authorities there cited.